UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br><br>DARREN WADE TRONSON AND DL FARMS LLC,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT** |

The United States of America ("United States"), by Jennifer Klemetsrud Puhl, United States Attorney for the District of North Dakota, and Michael D. Schoepf and Melissa Helen Burkland, Assistant United States Attorneys, brings this action against Defendants Darren Wade Tronson ("Tronson") and DL Farms LLC ("DL Farms") to recover treble damages and civil penalties for violations of the False Claims Act, 31 U.S.C. §§ 3729–3733, and damages and other relief for the common law claims of payment by mistake and unjust enrichment. For its Complaint, the United States alleges as follows:

### INTRODUCTION

**I.      Summary of Claims.**

1.      Tronson, on his own behalf and on behalf of DL Farms, submitted false statements about the cause of the failure of his potato crops in crop years 2017 and 2018 to NAU Country Insurance ("NAU") and its reinsurer, the Federal Crop Insurance Corporation ("FCIC"). Specifically, Tronson claimed that adverse weather events caused his potato crops to fail even though the identified adverse weather events were not the cause of the crop failures and could not have caused an insurable loss under the applicable policies.

2. Tronson submitted these false statements to obtain indemnity payments for his failed potato crops with knowledge that the statements were false, in deliberate ignorance of the truth or falsity of these statements, and/or in reckless disregard of the truth or falsity of these statements.

3. As a result of Tronson's false statements, the United States, through the FCIC, paid Tronson and/or DL Farms $887,497 in indemnities for failed potato crops in crop years 2017 and 2018.

4. The false statements submitted by Tronson were material to the decision to pay Tronson and/or DL Farms for their failed potato crops. Specifically, the false statements had a natural tendency to influence, or were capable of influencing, the payment of indemnities to Tronson and/or DL Farms for their potato crops in crop years 2017 and 2018.

5. Tronson's submission of false statements about the cause of the failure of his potato crops violated the False Claims Act, 31 U.S.C. §§ 3729–3733, and entitles the United States to recover treble damages and civil penalties. Tronson's conduct also entitles the United States to recover damages for its common law claims of unjust enrichment and payment by mistake.

**II.     Parties.**

6. The Defendants are Tronson and DL Farms. Tronson is an individual and resident of Traill County, North Dakota. Tronson conducted his farming operations under his own name in 2017 and 2018.

7. DL Farms is a limited liability company organized and existing under North Dakota law. Upon information and belief, DL Farms was organized by Tronson and his wife, Lisa Tronson, for the purpose of conducting their farming business in eastern North Dakota and

western Minnesota. DL Farms was established in November 2018, and was the entity under which Tronson conducted his farming operations in 2019 and subsequent years.

8. DL Farms is a continuation of Tronson's farming business such that DL Farms is liable for Tronson's false statements under federal common law. DL Farms had notice of Tronson's false statements. The ownership, management, business operations, suppliers, and purchasers of DL Farms are the same as the ownership, management, business operations, suppliers, and purchasers of Tronson's farming business. The only change in the farming operation between 2018 and 2019 was that Tronson no longer farmed under his own name and instead farmed under the name DL Farms.

9. The Plaintiff is the United States, suing on behalf of the FCIC and the Risk Management Agency ("RMA").

10. The FCIC is a wholly owned government corporation within the United States Department of Agriculture ("USDA"). The FCIC is funded by Congress to provide reinsurance to privately owned crop insurance companies called Approved Insurance Providers ("AIPs"), administrative and operating ("A&O") expenses to AIPs, and crop insurance premium subsidies to farmers.

11. The Risk Management Agency ("RMA") is the Agency within the USDA that is responsible for operating, managing, and administrating the federal crop insurance program.

**III.   Jurisdiction and Venue.**

12. The Court has jurisdiction over this matter pursuant to 31 U.S.C. §§ 3729–3733, 7 U.S.C. § 1506(d), and 28 U.S.C. §§ 1331, 1345, and 1355.

13. The Court has personal jurisdiction over Tronson and DL Farms because Tronson and DL Farms reside in, transact business in, and can be found in this district.

14. Under 31 U.S.C. § 3732(a), venue is appropriate in this district because Tronson and DL Farms reside in, transact business in, and can be found in this district.

## STATEMENT OF FACTS

### IV. The Federal Crop Insurance Program.

15. Congress created the federal crop insurance program in 1938 to help American farmers devastated by widespread drought and the Great Depression. Initially, participation in the program was low and coverage was limited to certain key crops in a limited number of counties.

16. In 1980, Congress expanded the program into a public-private partnership designed to provide more affordable coverage to more farmers. The modern crop insurance program is comprised of three parts: (1) AIPs, which sell and service crop insurance policies; (2) the FCIC, which reinsures crop insurance policies, subsidizes the premiums paid by farmers, and compensates AIPs for A&O expenses; and (3) the RMA, which is the division of the USDA responsible for operating, managing, and administrating the crop insurance program.

17. Today, the federal crop insurance program provides some form of protection to 380 million acres of farmland at an annual cost to the federal government of about $8 billion.

18. Most crop insurance policies issued under the federal crop insurance program are multiperil policies, meaning they protect farmers from crop losses that result from a variety of natural causes. Multiperil crop insurance policies cover losses caused by adverse weather (<u>e.g.</u> drought, hail, wind, and excess moisture), fire, plant diseases, and insect or wildlife damage.

19. To obtain multiperil coverage, the farmer must apply for coverage in the spring, identifying the crops the farmer intends to plant that year for which he is seeking crop insurance coverage. For potatoes planted in North Dakota, the application is due by March 15.

20. Once a farmer has established a crop insurance policy for a specific county, the policy automatically renews for each crop year. The farmer is responsible for his share of the premium for each insurable unit on an annual basis.

21. After planting is completed, the farmer and his insurance agent submit an acreage report, which identifies the farmer's planted acreage by property description, crop type, and planting date. Acreage reports are typically submitted in June or July, after planting is completed.

22. In the event of a storm or other event that the farmer believes may have caused an insurable loss, the farmer must submit a notice of loss identifying the event. Although a notice of loss may be submitted at any time during the effective period of the policy, a notice of loss generally must be submitted within 72 hours of the event that is alleged to have caused an insurable loss. The farmer informs his insurance agent of the expected loss. The insurance agent then submits a notice of loss to the AIP on the farmer's behalf.

23. The AIP opens a claim and assigns an adjuster. The adjuster prepares a claim file to include production worksheets, which are used to identify production from each insurable unit and calculate insurable losses, if any, incurred by the farmer. The adjuster and farmer review and sign the production worksheets. The adjuster submits the claim file to the AIP.

24. If there are insurable losses for a particular unit, the AIP processes the claim, completes a proof of loss, and indemnifies the farmer. The proof of loss contains a calculation of the amount due to the farmer for insured losses from each unit. The AIP typically mails the proof of loss and indemnity check to the farmer.

25. The FCIC then reimburses the AIP for the indemnity paid to the farmer under the Standard Reinsurance Agreement between the AIP and the FCIC.

26. To maintain eligibility for the federal crop insurance program and receive indemnity payments for covered losses, farmers must comply with the Common Crop Insurance Policy Basic Provisions ("Basic Provisions"). The Basic Provisions are set forth in the Code of Federal Regulations at 7 C.F.R. § 457.8.

27. Under the Basic Provisions, "[i]nsurance is provided only to protect against unavoidable, naturally occurring events. . . . All other causes of loss, including but not limited to the following, are not covered: . . . Failure to follow recognized good farming practices for the insured crop." 7 C.F.R. § 457.8, ¶ 12(b).

28. The Basic Provisions define "good farming practices" as the "production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee . . . ."

29. Losses caused by a farmer's failure to follow good farming practices are not insurable losses and the farmer is not eligible to receive indemnity payments for such losses.

V. **The Scheme to Defraud the United States.**

30. Tronson and DL Farms together applied for two multiperil crop insurance policies that are the subject of this Complaint. Policy number 2013476 covers, among other things, potatoes grown by Tronson in Grand Forks County, North Dakota, during crop years 2017 and 2018. Policy number 2013481 covers, among other things, potatoes grown by Tronson in Traill County, North Dakota, during crop year 2018 and potatoes grown by DL Farms in Traill County, North Dakota, during crop year 2019.

31. Tronson submitted the initial application for Policy No. 2013476 sometime before crop year 2014. In accordance with the policy provisions, the policy automatically renewed in all subsequent crop years.

32. Tronson periodically submitted new application forms when Policy No. 2013476 renewed. The new forms were submitted for the purpose of changing his coverage for certain crops. In accordance with the application requirements, each time Tronson submitted a new application form he signed the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)." A copy of the March 12, 2018 application/change form for Policy No. 2013476 is attached and marked as **Exhibit A**.

33. Tronson submitted the initial application for Policy No. 2013481 sometime before crop year 2014. In accordance with the policy provisions, the policy automatically renewed in all subsequent crop years.

34. Tronson periodically submitted new application forms when Policy No. 2013481 renewed. The new forms were submitted for the purpose of changing his coverage for certain crops. In accordance with the application requirements, each time Tronson submitted a new application form he signed the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)." A copy of the March 12, 2018 application/change form for Policy No. 2013481 is attached and marked as **Exhibit B**.

### A. The 2017 Crop Year.

35. On June 30, 2017, Tronson submitted his acreage report for Grand Forks County for the 2017 crop year. In the report, Tronson reported that he planted 220.78 acres of potatoes in Grand Forks County on May 21, 2017, for which he was seeking coverage under Policy No. 2013476. A copy of the June 30, 2017, acreage report for Grand Forks County is attached and marked as **Exhibit C**.

36. The June 30, 2017, acreage report included the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)." Tronson further acknowledged that by signing the acreage report he "accept[s] all terms and conditions" of the crop insurance program.

37. On July 3, 2017, and again on July 6, 2017, Tronson submitted a notice of loss to his AIP, certifying that his potato crop in Grand Forks County was damaged by "excess precip." on June 28, 2017. A copy of the 2017 notice of loss form is attached hereto and marked as **Exhibit D**.

38. On January 6, 2018, Tronson signed the notice of loss, which included the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)."

39. Also on January 6, 2018, Tronson signed a production worksheet, certifying that 100% of his 2017 potato crop in Grand Forks County was lost due to excessive precipitation in late June 2017. A copy of the production worksheet is attached and marked as **Exhibit E**.

40. The production worksheet includes the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)."

41. The alleged excessive moisture on June 28, 29, and 30, 2017 was not the actual cause of the loss of Tronson's 2017 potato crop in Grand Forks County.

42. Tronson's 2017 potato crop failed due to his failure to follow good farming practices as required by the Basic Provisions. Tronson's failure to follow good farming practices is evidenced by his failure to test the soil to determine the amount of fertilizer necessary; his failure to select suitable land for growing potatoes; his failure to apply the proper amount of fertilizer; his failure to apply herbicide appropriately; his failure to plant sufficient seed potatoes; and his failure to properly prepare the seed potatoes for planting.

43. When Tronson submitted the notices of loss on July 3 and July 6, 2017, signed the notices of loss on January 6, 2018, and signed the production worksheet on January 6, 2018, he knew that excessive precipitation on June 28, 29, and 30 was not the actual cause of his crop failure, he acted in deliberate ignorance of the truth or falsity of whether excessive precipitation on June 28, 29, and 30 was the actual cause of his crop failure, and/or acted in reckless disregard

of the truth or falsity of whether excessive precipitation on June 28, 29, and 30 was the actual cause of his crop failure.

44. Specifically, Tronson submitted and signed the notices of loss described in Paragraph 40, above, even though he knew or should have known that his 2017 potato crop failed or was failing before the alleged excessive precipitation event on June 28, 29, and 30, 2017. NAU conducted an inspection of Tronson's potato fields on June 19, 2017. The June 19, 2017 inspection showed that Tronson's potato plants had not yet begun to grow as they should have and many of the seed potatoes were already rotting in the ground.

45. Given that the plants had failed to emerge and many of the seed potatoes were already rotting in the ground on June 19, 2017, the alleged excessive precipitation on June 28, 29, and 30, 2017, could not have caused the loss of the 2017 potato crop.

46. Tronson requested or demanded payment in the amount of $224,968 from NAU for losses associated with his 2017 potato crop. Tronson's request or demand for payment of money from NAU was a request or demand for money to be spent or used on the United States' behalf or to advance the United States' interest in the federal crop insurance program, and the United States reimbursed NAU for all or some portion of the money which Tronson requested or demanded in accordance with its obligations under its standard reinsurance agreement with NAU.

47. Tronson's false statements regarding the cause of the failure of his 2017 potato crop in Grand Forks County had a natural tendency to influence, or were capable of influencing, the payment of indemnities in the amount of $224,968 for Tronson's 2017 potato crop in Grand Forks County.

B.     **The 2018 Crop Year.**

48.    On July 9, 2018, Tronson submitted his acreage report for Grand Forks County for the 2018 crop year. In the report, Tronson reported that he planted 765.54 acres of potatoes in Grand Forks County on June 2 through June 5, 2018, for which he was seeking coverage under Policy No. 2013476. A copy of the July 9, 2018, acreage report for Grand Forks County is attached and marked as **Exhibit F**.

49.    The July 9, 2018, acreage report included the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)." Tronson further acknowledged that by signing the acreage report he "accept[s] all terms and conditions" of the crop insurance program.

50.    On September 26, 2018, Tronson submitted a notice of loss to his AIP, certifying that his potato crop in Grand Forks County was damaged "due to dry conditions." The September 26 notice of loss only applied to 113.02 acres of potatoes. On February 15, 2019, Tronson submitted a second notice of loss, certifying an additional loss of unspecified cause on all 765.54 acres of potatoes. Copies of the 2018 notice of loss forms are attached hereto and marked as **Exhibit G**.

51.    On January 29, 2019, and again on February 15, 2019, Tronson signed the notice of loss forms, which included the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not

limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)."

52. On February 19, 2019, Tronson signed a production worksheet, certifying that 100% of his potato crop on one unit totaling 113.02 acres in Grand Forks County was lost due to drought. He further certified that 50% of his crop on an additional three units totaling 372.22 acres was lost due to excessive moisture. The unit allegedly lost due to drought was harvested, as well as 50.51 acres in one of the units partially lost due to alleged excess moisture. The remaining acreage was never harvested. A copy of the production worksheet is attached and marked as **Exhibit H**.

53. The production worksheet includes the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)."

54. On July 9, 2018, Tronson submitted his acreage report for Traill County for the 2018 crop year. In the report, Tronson reported that he planted 153.56 acres of potatoes in Traill County on May 30, 2018, for which he was seeking coverage under Policy No. 2013481. A copy of the July 9, 2018, acreage report for Traill County is attached and marked as **Exhibit I**.

55. The July 9, 2018, acreage report included the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18

U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)." Tronson further acknowledged that by signing the acreage report he "accept[s] all terms and conditions" of the crop insurance program.

56. On February 4, 2019, Tronson submitted a notice of loss to his AIP, certifying that his potato crop in Traill County was damaged by unspecified causes. A copy of the 2018 notice of loss form is attached hereto and marked as **Exhibit J**.

57. On February 19, 2019, Tronson signed the notice of loss form, which included the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)."

58. On February 19, 2019, Tronson signed a production worksheet, certifying that 100% of his 2018 potato crop in Trail County was lost due to drought. A copy of the production worksheet is attached and marked as **Exhibit K**.

59. The production worksheet includes the following certification: "I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1506; 31 U.S.C. § 3729, § 3730 and any other applicable federal statutes)."

60. The alleged excessive moisture, drought, and "other" causes were not the actual causes of the loss of Tronson's 2018 potato crop in Grand Forks County and Traill County.

61.     Rather, Tronson's 2018 potato crop failed due to his failure to follow good farming practices as required by the Basic Provisions. Tronson's failure to follow good farming practices is evidenced by his failure to test the soil to determine the amount of fertilizer necessary; his failure to apply the proper amount of fertilizer; his failure to select appropriate land; his failure to apply herbicide appropriately; his failure to plant sufficient seed potatoes; and his failure to properly prepare the seed potatoes for planting.

62.     When Tronson submitted the notices of loss for his 2018 potato crop in September 2018 and February 2019, signed the notices of loss in February 2019, and signed the production worksheets in February 2019, he knew that neither excessive precipitation nor drought were the causes of his potato crop losses in 2018, he acted in deliberate ignorance of the truth or falsity of whether excessive precipitation or drought were the actual causes of his crop failure, and/or he acted in reckless disregard of the truth or falsity of whether excessive precipitation or drought were the actual causes of his crop failure.

63.     Specifically, when Tronson submitted the notices of loss and production worksheets for his 2018 potato crop, Tronson knew or should have known that neither drought nor excessive moisture caused the failure of his potato crops that year. Weather data for Grand Forks County and Traill County for 2018 indicates a normal precipitation year. Moreover, a field inspection conducted on September 13, 2018, showed that the potato plants failed to emerge in many of Tronson's fields, many of the fields were overrun by weeds, and some were damaged due to alkaline soil.

64.     Furthermore, Tronson's failure to harvest many of his potatoes in 2018 was not caused by weather. Rather, Tronson failed to harvest many of his crops in 2018 because he did not have funds available to pay for fuel and other expenses. A creditor, Dakota Heritage Bank,

harvested many of Tronson's crops for him that year, but it did not harvest his potato crop. See Dakota Heritage Bank of North Dakota v. Tronson, Case No. 49-2018-cv-00108 (Traill County, ND, Sept. 20, 2018). Failure to harvest due to lack of funds is not an insurable loss.

65. Tronson requested or demanded payment in the amount of $662,529 from NAU for losses associated with his 2018 potato crop. Tronson's request or demand for payment of money from NAU was a request or demand for money to be spent or used on the United States' behalf or to advance the United States' interest in the federal crop insurance program, and the United States reimbursed NAU for all or some portion of the money which Tronson requested or demanded in accordance with its obligations under its standard reinsurance agreement with NAU.

66. Tronson's false statements regarding the cause of the failure of his 2018 potato crop in Grand Forks County and Traill County had a natural tendency to influence, or were capable of influencing, the payment of indemnities in the amount of $662,529 for Tronson's 2018 potato crop in Grand Forks County and Traill County.

## STATEMENT OF CLAIMS

### Count 1: Violation of 31 U.S.C. § 3729(a)(1)(A)–(B) 2017 Potato Crop

67. As described above, Tronson knowingly presented, or caused to be presented, to the United States a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A). Specifically, Tronson knowingly presented, or caused to be presented, a false claim for payment of indemnities with respect to his 2017 potato crop.

68. Tronson knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B). Specifically, Tronson knowingly made, used, or caused to be made or used false records in the

form of the notice of loss and production worksheet submitted in connection with his claim for payment of indemnities for his 2017 potato crop.

69. The United States, acting through the FCIC and in reliance upon the above-referenced false claims and supporting materials, paid Tronson's claim for the alleged loss of his 2017 potato crop in the amount of $224,968.

70. By reason of this payment, the United States is entitled to recover treble damages from Tronson and DL Farms, his successor in interest under the policies, in the amount of $674,904. In addition, the United States is entitled to recover a civil penalty from Tronson in the maximum amount allowed by law for each false statement made or presented in violation of the law.

### Count 2: Violation of 31 U.S.C. § 3729(a)(1)(A)–(B) 2018 Potato Crop

71. As described above, Tronson knowingly presented, or caused to be presented, to the United States a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A). Specifically, Tronson knowingly presented, or caused to be presented, a false claim for payment of indemnities with respect to his 2018 potato crop.

72. Tronson knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B). Specifically, Tronson knowingly made, used, or caused to be made or used false records in the form of the notices of loss and production worksheets submitted in connection with his claims for payment of indemnities for his 2018 potato crop.

73. The United States, acting through the FCIC and in reliance upon the above-referenced false claims and supporting materials, paid Tronson's claim for the alleged loss of his 2018 potato crop in the amount of $662,529.

74. By reason of this payment, the United States is entitled to recover treble damages from Tronson and DL Farms, his successor in interest under the policies, in the amount of $1,987,587. In addition, the United States is entitled to recover a civil penalty from Tronson in the maximum amount allowed by law for each false statement made or presented in violation of the law.

### Count 3: Unjust Enrichment

75. Tronson and DL Farms are liable to the United States based on the equitable remedy of unjust enrichment for damages in an amount to be proved at trial.

76. Specifically, Tronson and DL Farms have been enriched and the United States has been impoverished by the payment of indemnities for bogus potato crop failures in 2017 and 2018.

77. As described above, there is no justification for the enrichment of Tronson and DL Farms and the impoverishment of the United States because Tronson and DL Farms were not entitled to receive and retain those payments under the applicable crop insurance policies and federal regulations.

### Count 4: Payment by Mistake

78. The United States has longstanding authority, independent of statute, to recover monies its agents have wrongfully, erroneously, or illegally paid out. See United States v. Wurts, 303 U.S. 414, 416 (1938).

79. The United States reimbursed NAU for the money paid to Tronson for the loss of his 2017 and 2018 potato crops under a mistaken belief about the cause of those losses.

80. The cause of the loss was material to the United States' decision to pay.

81. The United States is entitled to recover damages from Tronson and DL Farms under Count 4 in an amount to be proved at trial because the payment to NAU was made under a mistaken belief about the cause of the potato crop losses.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays for judgment as follows:

(1) As to Counts 1 and 2 of the United States' Complaint against Tronson and DL Farms, jointly, for treble the damages sustained by the United States in an amount to be proven at trial, plus civil penalties in the maximum amount allowed by law for each violation of the False Claims Act, and post-judgment interest.

(2) As to Counts 3 and 4 of the United States' Complaint against Tronson and DL Farms, jointly, for damages or restitution in an amount to be proven at trial by which DL Farms and Tronson have been enriched and the United States has been impoverished or DL Farms and Tronson have been paid by mistake, pre-judgment interest, and post-judgment interest.

(3) For the United States to be granted its costs and disbursements in this action, together with such other further relief as this Court may deem just and proper.

## JURY DEMAND

The United States hereby demands a trial by jury.

Dated:  July 14, 2022

                    JENNIFER KLEMETSRUD PUHL
                    United States Attorney

By:   */s/ Michael D. Schoepf*
      MICHAEL D. SCHOEPF
      Assistant United States Attorney
      ND Bar ID 07076
      P.O. Box 699
      Bismarck, ND  58502-0699
      (701) 530-2420
      michael.schoepf@usdoj.gov

      MELISSA HELEN BURKLAND
      Assistant United States Attorney
      WI Bar ID 1071443
      655 First Avenue North, Suite 250
      Fargo, ND  58102-4932
      (701) 297-7400
      melissa.burkland@usdoj.gov

      Attorneys for the United States